# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MATTHEW E. HICKEY, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00264 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.   Introduction

Plaintiff Matthew Hickey brings this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI").  Plaintiff protectively filed his application on June 28, 2011, alleging disability since October 18, 2006.[2]  (*PageID##* 236-41).  He claims to be disabled due to spinal stenosis, spondylolisthesis, and anger issues. (*PageID#* 331).  After his application was denied during the initial administrative proceedings, Plaintiff was provided a hearing before Administrative Law Judge ("ALJ")

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Plaintiff previously filed for benefits in November 2008. His prior applications were denied. (*PageID##* 140-41, 143, 169-75).

Scott R. Canfield. (*PageID##* 78-139). On April 5, 2013, ALJ Canfield issued a decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act, and was therefore not eligible for SSI. (*PageID##* 56-72). The Appeals Council denied Plaintiff's request for review, and ALJ Canfield's decision became the Commissioner's final decision.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply, (Doc. #12), the administrative record (Doc. # 8), and the record as a whole.

## II. Background

### A. Plaintiff's Vocational Profile and Testimony

Plaintiff was 37 years old at the time he filed his application for benefits and is considered a "younger individual" for purposes of resolving his SSI claim. *See* 20 C.F.R. § 416.963(c); *see also PageID##* 71, 236. Plaintiff has obtained a GED. *See* 20 C.F.R. § 416.964(b)(4); *see also PageID##* 71, 91, 332. He has past relevant work as a truss assembler, a lumber handler, a power washer, and a painter. (*PageID##* 70, 332).

Plaintiff testified at the administrative hearing that he is 6' tall and weighs 206 pounds. (*PageID#* 87). Plaintiff initially hurt his back in 2006. His back went out when he was moving barrels at work. He described his work as "very physical." (*PageID##* 88-89). He lives by himself in a two-story apartment, but minimally uses the stairs. (*PageID##* 89-91). He drove to the hearing, but does not own a vehicle and only drives when he needs to take his mother somewhere. (*PageID##* 91-92). At the time of the

hearing he was driving twice a week to aquatic therapy, but prior to starting therapy he drove no more than 2 or 3 times a month. (*PageID#* 92). Plaintiff testified that when he does drive, he has to stop because he cannot sit long, and he has trouble turning. (*PageID#* 91).

Plaintiff described his pain as starting in the lower back and then it "sometimes" shoots through his leg. (*PageID#* 95). Plaintiff is in the worst pain when he gets out of bed in the morning and has to go down the stairs. (*Id.*). Plaintiff rated his pain severity in the mornings at a level of 10 on a 0 to 10 visual analog scale. (*PageID##* 95-96). After his medication takes effect he rated his pain level at a 3 or 4. (*PageID#* 96). Plaintiff's pain also affects his sleep. He generally sleeps 4 or 5 hours at "the most." (*PageID#* 97).

Plaintiff can pull a gallon of milk out of the refrigerator if his arm is straight out, but cannot lift anything if his arm is bent. (*PageID##* 102-03). Plaintiff acknowledged that walking from his car to the hearing office (which was half of a block), pushed his "limits." (*PageID##* 103-04). Plaintiff estimated that he could stand for about 10 minutes. (*PageID#* 105). When sitting, Plaintiff testified that he needed to adjust constantly to take the pressure off one part of his body or another. (*PageID##* 105-06).

Plaintiff stopped taking his psychotropic medications, noting they helped "maybe a little." (*PageID#* 107). Plaintiff believes that the doctors told him that he was too young to undergo surgery previously, but his current doctor, Dr. Yu, is looking into getting cadaver bones for a spinal surgery. (*PageID##* 109-10). The prospect of surgery scares him "to death." (*PageID#* 110).

3

During a typical day, Plaintiff watches television and takes naps. (*PageID##* 97-99). He uses a treadmill to pull himself up from the couch. (*PageID#* 118). Plaintiff only takes showers. He can no longer bathe due to trouble getting out of his tub. (*PageID#* 116). His mother, his ex-girlfriend, and her two teenage children help him with household chores. (*PageID##* 112-13). Plaintiff only prepares simple canned soups and sandwiches for himself. (*PageID#* 113). He sometimes has to re-read a page because he has "spaced it out, thinking about other stuff." (*PageID#* 114).

Plaintiff testified to having good and bad days. His condition has worsened to the point that more than half the days in any given month are "bad" days, during which he cannot do much. (*PageID#* 121). Plaintiff described the side effects from his pain medication as drowsiness, forgetfulness, his equilibrium is off and it affects his bowel movements. (*PageID#* 123).

  **B.** **Medical Evidence**

The administrative record contains many medical records plus opinions from non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and the parties have summarized the relevant records concerning Plaintiff's physical and mental conditions with citations to specific evidence.

  **C.** **Vocational Expert Testimony**

The Vocational Expert ("VE"), William Braunig, classified Plaintiff's past employment as a truss assembler, as medium, semi-skilled work; a lumbar handler, as

4

heavy, unskilled work; a power washer, as medium, unskilled work; and a painter as medium, skilled work. (*PageID##* 127-28). The VE acknowledged that an individual of Plaintiff's age, education and work experience – who is limited to work at no more than the light exertional level – could not perform his previous job. (*PageID##* 129-30).

The VE also testified that, based on an residual functional capacity[3] of light work with restrictions to never climb ladders, ropes or scaffolds; occasionally climb ramps/stairs; stoop, kneel, crouch, and crawl; frequently balance; avoid even moderate exposure to hazards (e.g., dangerous machinery, unprotected heights); perform simple, repetitive, routine tasks with no fast-paced duties or strict production quotas; simple work decisions; and no more than minimal changes in the work setting, Plaintiff could perform 30,000 jobs in the regional economy. (*PageID##* 129-30). With the added limitation to alternate between sitting and standing at 30-minute intervals, the VE testified that the number of jobs would be reduced to approximately 18,000. (*PageID#* 130).

The VE testified that being off task 10 percent per hour during the work day was beyond the typical breaks allowed and the employee would be subject to disciplinary action and subsequent termination. (*PageID##* 133-35).

### III. "Disability" Defined and the ALJ's Decision

The Social Security Administration provides Supplemental Security Income (SSI) to indigent individuals, subject to several eligibility requirements. Chief among these, for

---

[3] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 416.945 (a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

purposes of this case, is the "disability" requirement. To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[4] 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Canfield applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2 of the sequential evaluation, ALJ Canfield concluded that Plaintiff has the severe impairments of vertebrogenic disorder of the lumbar spine with degenerative disc disease and radiculopathy, depressive disorder, and anxiety disorder. (*PageID#* 62).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings, including sections 1.04, 12.04, and 12.06. (*PageID##* 65-66).

At Step 4, the ALJ evaluated Plaintiff's residual functional capacity and concluded that Plaintiff can:

---

[4] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

6

> lift/carry no more than 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can stand, walk, and sit as much as six hours each during any given eight-hour workday. He should be provided the opportunity to alternate between sitting and standing at 30-minute intervals. [Plaintiff] should never climb ladders, ropes or scaffolds. He can occasionally climb ramps/stairs. [Plaintiff] can occasionally stoop, kneel, crouch, and crawl. He can frequently balance. [Plaintiff] should avoid even moderate exposure to hazards (e.g., dangerous machinery, unprotected heights). He is limited to performing simple, repetitive, routine tasks with no fast-paced duties or strict production quotas. [Plaintiff] can make simple work decisions. He should not be exposed to more than minimal changes in the work setting.

(*PageID#* 66). The ALJ also concluded at Step 4 that "there is no convincing evidence to show that [Plaintiff] would be unable to function effectively in some types of work environments while performing duties involving the reduced range of light exertion described above." (*PageID#* 70).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability. (*PageID#* 72).

**IV.** <u>**Judicial Review**</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains

evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.      Discussion**

    **A.      Plaintiff's Contentions**

Plaintiff argues that the ALJ improperly analyzed his credibility and based his ultimate finding on an incomplete assessment of his residual functional capacity, resulting

in incomplete hypothetical questions to the VE.  According to Plaintiff, the ALJ failed to craft a residual functional capacity that fairly accounts for all limitations resulting from his severe impairments, particularly mental health disorders he alleges cause a "moderate" limitation to concentration, persistence or pace and social functioning.  Plaintiff alternatively seeks a remand under Sentence Six of 42 U.S.C. §405(g) for administrative consideration of certain evidence he argues is new and material.

B. Analysis

1. Plaintiff's residual functional capacity and the VE's Testimony

During the sequential analysis, the ALJ determined Plaintiff's residual functional capacity.  20 C.F.R. §§ 416.920(a)(4), 416.945.   The ALJ found Plaintiff could perform a range of work that accommodated a variety of mental limits.  (*PageID# 66*).  According to the ALJ, Plaintiff can perform simple, repetitive, routine tasks with no fast-paced duties or strict production quotas; make simple work decisions and not be exposed to more than minimal changes in the work setting.  (*Id.*).  As explained in his decision, in formulating Plaintiff's functional capacity assessment, the ALJ considered the opinions and findings of the examining and reviewing medical sources, as well as other evidence of Plaintiff's activities and treatment.  (*PageID## 66-70*).

The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity.  *See e.g.,* 20 C.F.R. § 416.927(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner.").  Moreover,

9

the Social Security Act and agency regulations require an ALJ to determine a claimant's residual functional capacity based on the evidence as a whole.  42 U.S.C. § 423(d)(5)(B), 1382c(a)(3)(H)(i)(incorporating § 423(d) for Title XVI); 20 C.F.R. § 416.945(a) ("the ALJ . . . is responsible for assessing your residual functional capacity").  Pursuant to the regulations, the ALJ is charged with evaluating several factors in determining the residual functional capacity, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony.  *Henderson v. Comm'r of Soc. Sec.,* 2010 WL 750222, No. 1:08-cv-2080 (N.D. Ohio March 2, 2010) (*citing Webb v. Comm'r of Soc. Sec.,* 368 F.3d 629, 633 (6th Cir. 2004)); Social Security Ruling ("SSR") 96-5p; SSR 96-8p.

An ALJ's residual functional capacity assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant non-medical evidence regarding what work a claimant is capable of performing.  SSR 96-5p.  SSR 96-8p instructs that the ALJ's residual functional capacity assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work.  SSR 96-8p.

20 C.F.R. § 416.927(d)(2) also explains that "[a]lthough we consider opinions from medical sources on issues such as your residual functional capacity, . . . the final

10

responsibility for deciding these issues is reserved to the Commissioner." The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their consistency with and support from "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.927(c)(2), (3), (4). Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir. 1994).

As to Plaintiff's ability to maintain social functioning, the ALJ here gave considerable weight to medical opinion evidence from examining psychologists, Alan Boerger, Ph.D. and Christopher Ward, Ph.D. They evaluated Plaintiff in July 2009 and September 2011, respectively. (*PageID##* 64, 465-69, 563-68). The ALJ accepted Dr. Ward's description of Plaintiff as cooperative and noted that rapport was easily established. (*PageID#* 64, citing to *PageID#* 565). The ALJ also noted that reviewing psychologist, Dr. Roy Shapiro, Ph.D., found only a "mild" degree of limitation in Plaintiff's ability to maintain social functioning. (*Id.*, citing to *PageID#* 480).

As to Plaintiff's ability to maintain concentration, persistence and pace, the ALJ assigned "great" weight to the assessment of state agency reviewing psychologist, Leslie Rudy, Ph.D., who completed a Mental Residual Functional Capacity Assessment in January 2012. (*PageID#* 65, citing *PageID#* 170). The ALJ also noted that examining

11

psychologist, Dr. Ward opined Plaintiff's depression may compromise his ability to respond to work pressures. (*PageID##* 65, 568). However, Dr. Ward also opined that Plaintiff presented adequate cognitive ability to manage work pressures and that Plaintiff denied any history of behavioral or emotional deterioration in response to work pressures when he was working. (*PageID#* 568). The ALJ accommodated these opinion with his general restriction for simple, repetitive, routine tasks with no fast-paced duties or strict production quotas, making simple work decisions, and no exposure to more than minimal changes in the work setting. (*PageID#* 65). The Social Security regulations and rulings expressly recognize that state agency psychologists are "highly qualified psychologists who are also experts in Social Security disability evaluation." *See* 20 C.F.R. § 416.927(e)(2)(i); SSR 96-6p; *see Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir. 2006) (en banc) (affirming ALJ's decision adopting reviewing physician's opinion over treating physician's opinion).

Relying on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), Plaintiff argues that the ALJ determined he suffered from moderate limitations in concentration, persistence or pace, and then erroneously limited him to simple, repetitive, routine tasks with no fast-paced duties or strict production quotas, only simple work decisions, and only minimal changes in the work setting. (*See* Doc. 9 at *PageID#* 758.) Dr. Rudy did determine that Plaintiff has moderate difficulties in concentration, persistence or pace

(*PageID#* 160), however, when she explained in "narrative form," Dr. Rudy found as follows:

> During the psych [consultative examination] [Plaintiff] was able to recall 4 digits forward and 3 backward. [Plaintiff] retains the ability to remember very short and simple (1-2 step) instructions.
>
> Mood and anxiety symptoms limit [Plaintiff]'s ability to sustain attention and persist to completion of complicated tasks. He alleges feeling hopeless and helpless. He was able to complete 5 sets of serial 7 subtractions. He retains the capacity to carry out simple repetitive tasks in a setting without demands for fast pace.

(*PageID#* 164). Other courts that have addressed this issue have concluded that the Psychiatric Review Technique portion of the form is merely a worksheet for the evaluator and does not constitute the evaluator's residual functional capacity assessment. *See Velez v. Comm'r of Soc. Sec.*, 2010 WL 1487599, *6, (N.D. Ohio Mar. 26, 2010) ("In general, . . . the ALJ is not required to include the findings in Section I in formulating residual functional capacity."); *Kachik v. Astrue*, 2010 WL 3852367, *6 (W.D. Pa. Sept. 27, 2010) (citing *Liggett v. Astrue*, 2009 WL 189934,*8 (E.D. Pa. 2009)); *Berry v. Astrue*, 2009 WL 50072, *15 (W.D. Va. Jan. 7, 2009); *Norris v. Astrue*, 2008 WL 4911794, *16 (E.D. N.C. Nov. 14, 2008); *Malueg v. Astrue*, 2007 WL 5480523, **6-7 (W.D. Wis. May 30, 2007). The form itself makes clear that it is the narrative of the form that embodies the actual assessment and this Court agrees with those other courts that have held that an ALJ is not required to expressly include the Psychiatric Review Technique notations in formulating

a claimant's residual functional capacity.  The ALJ did not, therefore, err in crafting Plaintiff's mental residual functional capacity.

Plaintiff's contention that the ALJ erred at Step 5 of the disability determination process lacks merit because Plaintiff has not shown that the ALJ's assessment of his residual functional capacity was based on legal error or unsupported by substantial evidence.  The ALJ consulted a VE to assist him in determining the extent to which Plaintiff's limitations eroded the unskilled light occupational base.  The ALJ relied on hypothetical questions to a VE that included the limitations identified in his residual functional capacity finding.  (*PageID##* 129-30).  The VE testified that there were 18,000 light exertional jobs in the regional economy which Plaintiff could perform given his residual functional capacity limitations.  (*PageID#* 130).  Relying on the VE's testimony concerning the number of jobs available, the ALJ found Plaintiff was not disabled.  As a result, the VE's testimony addressing a hypothetical person with these limitations and abilities – which incorporated the ALJ's residual functional capacity – constituted substantial evidence to support the ALJ's conclusion at Step 5 of the sequential analysis. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (citing *Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert....")).

    2.    **<u>Plaintiff's Credibility</u>**

The ALJ also considered Plaintiff's subjective complaints in evaluating his residual functional capacity, but found they were not entirely credible. (*PageID#* 75). The Sixth Circuit has held that it accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003). It is not the province of the reviewing court to "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997). The ALJ expressly stated that he had considered Plaintiff's subjective complaints in accordance with the requirements of SSR 96-4p, 96-7p, and 20 C.F.R. § 416.929 (*PageID#* 68), and set forth the various factors that he had considered in his credibility assessment, including specific citations to medical records and medical opinions, objective clinical findings, treatment regimen, medication use, observations at the hearing and activities. (*PageID##* 66-70).

In support of his findings, the ALJ pointed to Plaintiff's own testimony, including that he lived alone in a two-story apartment with his bedroom and bathroom on the second floor. (*PageID##* 89-90). Plaintiff had a driver's license and he drove himself to the hearing. (*PageID#* 91). He drove twice a week recently to go to aquatic therapy, and before that maybe 2 or 3 times a month. (*PageID#* 92).

As to Plaintiff's daily activities, the ALJ found that Plaintiff is able to live independently, maintain his own residence, operate a motor vehicle, and he expressed a

15

desire to return to work or school. (*PageID##* 64, 67). Plaintiff reported to the consulting psychologist, Dr. Boerger, that he performs household chores, does laundry, likes to cook, will go for walks, sees his girlfriend every day, and has no problems in stores. (*PageID#* 468). Based on this evidence, the ALJ determined that Plaintiff's complaints are not credible. (*PageID##* 69-70).

The ALJ's determination that Plaintiff's allegations were "less than credible" is therefore reasonable, supported by substantial evidence, and should not be disturbed. *See PageID#* 70; 20 C.F.R. § 416.929(c)(3)(i); *Walters*, 127 F.3d at 531 (6th Cir. 1997) (noting that an ALJ may consider "household and social activities engaged in by the claimant" in evaluating a claimant's credibility).

### 3. Sentence Six Remand

Plaintiff also contends that a Sentence Six remand is warranted due to new and material records from April 2013. These records are from Plaintiff's primary care physician, Elizabeth Yu, M.D. and Certified Family Nurse Practitioner ("CFNP") Elizabeth Helms, including records from OSU Spine Center. (*PageID##* 730-32).

In order for Dr. Yu and CFNP Helm's records to be reviewed by an ALJ, the Court would need to recommend the issuance of a Sentence Six remand, which is warranted only when the medical records are new and material, and good cause exists for the failure to incorporate them into the administrative record. *See* 42 U.S.C. § 405(g); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Although this evidence was submitted to the Appeals Council, it may be considered by the Court if the "good cause" standard is met. *See Cotton v. Shalala*, 2 F.3d 692 (6th Cir. 1993); *see also Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001). Plaintiff has presented circumstances sufficient to establish "good cause" for not filing the additional evidence in the record before the ALJ's hearing and subsequent decision. The evidence was not prepared until after the administrative record had closed following the ALJ's hearing in February 2013. Because of this, Plaintiff could not be reasonably expected to have obtained this evidence.

In addition, the fact that the additional evidence was unavailable to Plaintiff also establishes it constitutes "new" evidence. *See Hollon*, 447 F.3d at 483-84. This "new" status is further evidenced by the fact that the administrative record did not contain any evidence from this medical source before the ALJ's hearing. *See Hollon*, 447 F.3d at 483-84 ("[E]vidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding.")(internal quotation marks and citation omitted).

Turning to materiality, Plaintiff's additional evidence (1) must be relevant and probative of his condition prior to the ALJ's decision, and (2) must establish a reasonable probability that the ALJ would have reached a different decision if he had considered the evidence. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hollon*, 447 F.3d at 488. The evidence concerns Plaintiff's vertebrogenic

17

disorder of the lumbar spine with degenerative disc disease and radiculopathy impairment demonstrating that by April 2013 surgery was now being recommended.  (*PageID##* 730-32).  Having carefully reviewed the additional records submitted by Dr. Yu and CFNP Helm, the Court finds such records would not have changed the ALJ's decision.

Notably missing from Dr. Yu's and CFNP Helm's records is a medical opinion from them on the severity of Plaintiff's vertebrogenic disorder of the lumbar spine with degenerative disc disease and radiculopathy impairments and/or how his impairments affect his ability to work.  *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (finding that a doctor's observations do not qualify as "medical opinions" entitled to deference under Social Security regulations).  Because ALJs are not qualified to interpret raw medical data into functional limitations, a residual functional capacity determination must be supported by medical opinions in the record.  *See Mitsoff v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 693 (6th Cir 2013).  To that end, there is no reasonable probability that the ALJ would have altered his decision based on these treatment notes alone, without any medical opinion in the record that Plaintiff's vertebrogenic disorder of the lumbar spine with degenerative disc disease and radiculopathy impairments were disabling.  Moreover, these treatment records on their face do not support a finding of disability.  The records show only that surgery was recommended.  (*PageID##* 730-32, 747).

Likewise, Plaintiff's argument that the April 2013 treatment records are "material" because they directly rebut the reasoning behind the ALJ's adverse credibility finding is

18

not persuasive.  *See* Doc. #9, *PageID#* 761.  The ALJ's determination that Plaintiff's allegations are not credible was not dispositive of the ultimate non-disability finding in this case.  Having found that Plaintiff had severe physical and mental impairments, the ALJ continued with the five-step analysis and, at each step, he was required to consider all of Plaintiff's impairments, both severe and non-severe.  *See Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987).  As stated above, the Court finds the additional records from Dr. Yu and CFNP Helms would not have changed the ALJ's final non-disability determination.  Therefore, the records are not "material" for purposes of Sentence Six of § 405(g).

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.

July 29, 2015

                                                    s/Sharon L. Ovington
                                                      Sharon L. Ovington
                                        Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).